CaRUTheks, J.,
delivered the opinion of the Court.
Price, a citizen of Virginia, on the 10th of June, 1853, sold to the defendant, his son-in-law, the one-half of his “ Elk-garden” tract of land, and executed the following article :
“ Know all men by these presents, that I, John W. Price, of Washington county, Va., hereby obligate myself to make unto James D. Thomas, of Claiborne county, Tenn., a legal general warranty title to one-half of my Elk-garden tract of land, in Russell county, Virginia.” After the description by metes and bounds, the article continues thus: “furthermore, I, J. W. Price, propose to give my daughter Julia A., said Thomas’ wife, the other half of said land ; which, if I fail t'o do, I hereby hind myself and my heirs to refund the money to said Thomas which he may pay for said land, together with its interest. This obligation is in consideration of $3,000, to be paid me by said Thomas. I furthermore bind myself, to remove the present incumbent, M. Askew, and give Thomas possession; and until this be done, to allow to said Thomas the enjoyment of the rent of half the said Elk-garden lands, together with interest on all the money which he may pay toward said land.”
*285 This is signed under seal by Price.
October 27, of the same year, 1853, J. W. Price, jointly, with his wife, Mary Price, made a general warranty deed to Thomas, of an undivided moiety of said land.
June 27, 1854, Askew still remaining in possession, and three years of his lease from Price unexpired, an article of agreement was entered into between him and Thomas, prescribing the manner in which the land should be used and cultivated, protecting the timber, &c., and concluding with this clause, “ though the said Askew had agreed with J. W. Price to give up the farm when it was deeded, to the said Thomas; yet the said Thomas, on his part, to secure to Askew the benefit of the farm for the before mentioned three years, with the restrictions before named.” In a previous part of the article, Askew bound himself to “ fulfil the conditions of the articles between himself and Price, for the remaining three years.”
After this, August 22, 1855, it would seem that there was a settlement between Price and Thomas, by which it appeared that there was still due of the consideration for the land, a balance of $1084.90, for which a new note was executed by Thomas, in which there is this clause, “ This bond is to bear interest from the time that full possession of said land is given to me.” On the same paper, and preceding the note, it is written and signed by Price, that “ Price is to pay interest on $1915.10 until the next payment is made, and so on, from the date of the following note on Thomas.” And on the back of the note is a credit of $47.98, Eeb. 13, 1856.
Upon this note an action was instituted in the Circuit Court of Claiborne county, pending which, this attachment bill was filed against Thomas and Gibson, charging that Thomas had sold his interest in the land to Gibson, and had his notes, and was not able to pay him without that fund, and he prayed and obtained an attachment of the notes upon Gibson.
Thomas then filed a cross-attachment bill, upon the ground that Price was his debtor $3000, the amount of the consideration of the land, upon his failure to perform the covenant, to refund him the said amount, in case he failed to convey to *286 Mrs. Thomas the other half of the Elk-garden tract, and that he had not only failed to perform his covenant in this respect, but had placed it out of his power to do so, by conveying it to another.
The first and main question debated upon this state of facts, arises upon the cross-bill, as to the obligation upon Price to pay the $3000, as liquidated damages, or the penalty for failure to convey the other moiety of the Elk-garden land to the wife of Thomas. The position of the bill, or that assumed in argument, is, that Price has become the debtor of Thomas, to the amount of $3,000, of which the note sued upon is a part, and as he is a non-resident, it is a proper .case for attachment of the note sued upon. It is not .a bill for specific performance of the covenant in favor of his wife. If that were the object, that immense volume of evidence in relation to the separation of Thomas and his wife, and the causes of it, would have some application to the case, and be proper for consideration, because it might operate upon the discretion of the Court, to which bills for specific performance ar.e addressed. But as the cross-bill is based upon the assumption that the relation of debtor and creditor between Thomas and Price, has resulted from the failure on the part of the latter to perform his contract in that respect, that proof is all entirely irrelevant.
In no point of view can the cross-bill be maintained for the recovery of the $3000. We do not understand, from the whole instrument, that this stipulation in favor of Mrs. Thomas, who was the daughter of Price, was any part of the consideration for the $3000 agreed to be paid upon the contingency stated, but that the moiety of the land was the sole consideration. We think that construction of the contract is unauthorized by the instrument. It is plausible, but not sound. The bill gives the transaction that complexion, but it is denied in the answer, and we are left to settle it as a question of construction. The land was a full consideration for the amount to be paid. A few months after the contract, it will be seen that a deed in fee, with warranty, was made to Thomas. What consideration then, was there for the obligation to re *287 fund to Thomas the $3000, which he now claims as a debt ? Price insists in the writing, that it is his '■‘■purpose” to give the other half of the land to his daughter, and in case he fails to execute that purpose, he will pay her husband the amount specified. This must be regarded as a naked, voluntary undertaking, -and will not be enforced in favor of Thomas.
But if it be regarded as bifiding, the time has not arrived for its enforcement. There is no time specified for the gift to his daughter to be perfected, and, consequently, he would have his whole lifetime in which to carry it out. It may be done in his will, and so the deed received by Thomas for the moiety bought by him, provides. This must then be taken as the understanding of the parties as to the time. In no view, therefore, can Thomas be regarded as a creditor, or Price a debtor, in that respect. The cross-bill was properly dismissed as to that aspect.
But it was properly entertained for an account between the parties, to ascertain how much, if any thing, remained due upon the note sued upon.
There is no error in the decree, settling the basis of the account. Price is made to account for one-half of the rents received by him, and also the interest upon the amount he had received of the consideration. It would seem inequitable, that Thomas should get the rents in place of the use of the place, and at the same time interest on what he had paid for it; and so it would be regarded, if it were not for his positive contract. It was competent for him to make his contract in that way, and he must abide by it. He expressly bound himself in the original contract, to give the possession to Thomas, and until that was done, to allow him the “ enjoyment of the rent of half” the place, “together with interest on all the money which he may pay toward said land.” And in pursuance of this stipulation, at the last settlement, August 22, 1855, it appeared that Thomas had paid $1915.10, and still owed $1084.90, for which a note of that date was given. Price then agreed, in writing, that he was to pay interest on *288 the amount which had been paid, and was to have no interest on the note until full possession was given of the land.
It is too clear for controversy, that Askew, the tenant of Price at the time, and long before the sale, continued in possession, and settled with Price for the rents; and that Thomas has never yet been put into possession of the land. This is all proved by Askew, the tenant. It is true, he acknowledged the title of Thomas, and entered into some contract with him in relation to the land, as before stated, but he never paid him any rent, but always paid the whole to Price, or gave his notes for it. It was right then, to make Price account, upon his contract, for one-half of the rent, and also for the interest on the amount of the consideration which had been paid to him, that is, upon the sum of $1915.10, from August 22, 1855, and also upon the $>47.98, from February 13, 1856. This sum, together with the one-half the rents received by Price, (with interest from the end of each year upon the rents,) and the credit of $47.98, will be deducted from the amount of the note in suit, without interest, and that will show the true state of accounts between the parties.
The decree will be affirmed, with the slight modifications indicated above.